**The below described is SIGNED.**

**Dated: December 07, 2005**

*William J. Thurman*

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH
### IN THE CENTRAL DIVISION

| | |
|---|---|
| In re: | |
| **Nicholas John Galanis and Lee Ann Galanis,** | Bankruptcy Number 05-80037 |
| Debtors. | Chapter 13 |
| In re: | |
| **Siaosi Vehikite and Foou Vehikite**, | Bankruptcy Number 05-80038 |
| Debtor. | Chapter 13 |

### MEMORANDUM DECISION

These matters come before the Court on motions to extend the automatic stay, under 11

U.S.C. § 362(c)(3)(B).[1]  Under § 362(c)(3), a debtor who had a prior case pending within one

year of filing the present case recieves an automatic stay lasting for thirty days only, unless the

debtor shows that he or she filed the present case in good faith. Each debtor in these cases had a

_____

[1]All statutory references herein are to Title 11 of the United States Code unless otherwise
indicated.

prior case pending within one year of filing their present cases.  They each argued that the Court

should extend the stay because they filed in good faith.  The Court determined that a debtor's

good faith under § 362(c)(3) is governed by a totality of the circumstances test, and looked to

factors historically used to determine a debtor's good faith under § 1307(c).  Under this analysis,

the Court determined that each debtor met their burden under § 362(c)(3) to show they filed in

good faith, and accordingly, the Court granted the motions in this case.

A hearing on these motions was conducted on November 28, 2005, within 30 days of the

debtors' bankruptcy petitions.  The parties submitted oral arguments and offered proof of the

debtors' testimony.  No parties objected to the offer.  Accordingly, the Court accepted the offers

as testimony of the represented debtors.[2]  The Court determined that notice in these matters was

appropriate in all respects.  For purposes of convenience, the Court consolidated these matters

under Bankruptcy Rule 7042.[3]  Although the Court issued its decision effective from the bench

on November 28, 2005, the Court reserved the right to issues this written memorandum decision,

containing its written findings of fact and conclusions of law, as allowed by Federal Rule of

Civil Procedure 52.[4]

## FACTS:

Based on the evidence presented at hearing on these matters, the Court makes the

following findings of fact.

---

[2]As authorized by rule 103(b) of the Federal Rules of Evidence.

[3]Extended to this proceeding through Bankruptcy Rule 9014(c).

[4]Incorporated into the Bankruptcy Code by Bankruptcy Rule 7052.

**The Vehikites**

On February 11, 2004, the Vehikites filed for chapter 13 protection with this Court ("2004 Case").  Mr. Michael Roberts served as counsel for the Vehikites in that case.  This Court confirmed the Vehikites' chapter 13 plan on November 30, 2004, requiring the Vehikites to make monthly payments of $400, and to return unsecured non-priority creditors 14% of their allowed claims.

The class of secured claims in the 2004 Case was comprised of one creditor who was secured by the Debtor's automobile.  This secured claim does not exist in the Vehikites' present case, as the vehicle has been surrendered. In the 2004 case, the Vehikites listed a class of priority creditors entitled to claims for $6,849.14.  The Vehikites list these same creditors and debts in their present case filed on November 1, 2005 ("The Vehikites' Present Case").  The Vehikites listed a class of unsecured non-priority creditors entitled to claims aggregating $21,070.65.  In the Present Case, the Vehikites list non-priority unsecured claims aggregating $42,408.36.

On November 9, 2004, the Chapter 13 Trustee filed a Motion to Dismiss the 2004 Case, asserting that the Vehikites' were delinquent on their plan payments by $1200. The Vehikites testified that they attempted to cure the deficiency and to file an objection to the Trustee's motion to dismiss by contacting their attorney, Mr. Roberts.  They testified that Mr. Roberts declined to help them, indicating that he was in the process of winding down his bankruptcy practice.  The Vehikites did not file an objection to the Trustee's motion to dismiss.  Instead, they paid the Trustee $1000, of the $1200 owing, albeit one day after the deadline for filing an objection to the Trustee's motion to dismiss.

This Court issued an order dismissing the Vehikites' 2004 Case on October 18, 2005.  On

3

November 1, 2005, still in the same financial position as they were under in the 2004 Case, the

Vehikites filed the Present Case with this Court, with new counsel.  On November 11, 2005, they

filed the present motion to continue the automatic stay.

**The Galanises**

On November 8, 2002, the Galanises filed for chapter 13 bankruptcy protection ("the

2002 Case").  On June 6, 2003, the Court confirmed the Galanises' chapter 13 plan.  The plan

required the Galanises to pay $160 per month and to return unsecured non-priority creditors 10%

of their allowed claims.

The class of secured claims in the 2002 Case was comprised of one creditor, Wells Fargo

Home Mortgage.  Wells Fargo was secured by the Galanises' home in Salt Lake City, Utah.  On

May 6, 2005, the Court granted Wells Fargo's Motion for Relief against the Galanises' home due

to post-petition defaults on the mortgage.

There were no unsecured priority creditors listed in the Galanises' 2002 Case.  The class

of unsecured non-priority creditors listed in the Galanises' 2002 Case was comprised primarily

of credit card debt incurred for personal purchases.  The debt owing to these creditors was

$66,670.99.

On May 17, 2005, the Chapter 13 Trustee filed a Motion to Dismiss the Galanises' 2002

Case, alleging that the debtors were five months delinquent in plan payments to the Trustee.  The

Galanises did not respond to the Trustee's motion.  The Court granted the motion and dismissed

the Galanises' case on July 18, 2005.

At the hearing on this motion, the Galanises testified that Mr. Galanis is permanently

disabled, and that Mrs. Galanis works full-time caring for him.  Their sole source of income is

4

from Workers' Compensation, an Employers Reinsurance Fund, and Social Security.  None of these sources of income are garnishable by creditors.  They further testified that in February, 2005, Mrs. Galanis broke her leg and hip.  She required substantial medical care, for which the debtors did not have insurance.  The Galanises testified that they were unable to cure the delinquency owing to the Trustee under their plan and continue with their 2002 Case because of these medical bills.  At the time of their dismissal, the Galanises had already paid unsecured creditors $2,008.46, or 45% of the obligations owing through their 2002 Case plan.

On November 1, 2005, the Galanises filed the present chapter 13 bankruptcy case ("The Galanises' Present Case").  The only substantial difference in their scheduled debts was the listed class of unsecured non-priority creditors.  Whereas the Galanises listed unsecured debts in their 2002 Case of $66,670.99, they listed unsecured non-priority debts in the Present Case of $172,892.54.  The Galanises testified that this increase was a direct result of the medical expenses they incurred to treat Mrs. Galanis's injured hip and leg.  The Court notes that the increase is also attributed to a listed co-signed debt for student loan obligations incurred by the Galanises' son.  The Galanises testified that this obligation is to be paid directly by their son. The student loans remain current.

On November 1, 2005, the same day the Galanises filed their Present Case, their son paid Wells Fargo $4,500 towards the arrearage owing on the debtors' mortgage obligations.  The Galanises testified that they are in the process of working with their relatives to bring the balance of the mortgage obligations current.

On November 7, 2005, the Galanises filed the present motion to extend the automatic

stay.[5]

## DISCUSSION:

**I.      JURISDICTION AND VENUE**

Jurisdiction over these matters is proper under 28 U.S.C. § 157(b)(2)(G).  Venue is

appropriate under 28 U.S.C. § 1409(a).

**II.     STANDARD OF PROOF**

Section 362(c)(3)(A) provides that where a debtor had another individual bankruptcy

case pending within 1 year of the present case, the automatic stay terminates "with respect to the

debtor" thirty days after filing.[6]  A party in interest may move the Court to extend the automatic

stay past 30 days "as to any or all creditors after notice and a hearing" if the party in interest

demonstrates that the present case was filed in good faith "as to the creditors to be stayed."[7]

Under 362(c)(3)(C)(i), a presumption arises that the present case was not filed in good

---

[5]Whereas the specific language of § 362(c)(3)(B) requires only that the Court hold a
*hearing* on a motion to extend the automatic stay while the stay is still in effect, it does not
require the Court to issue an order within such time.  Although it seems the Court may choose to
issue an order granting a motion to extend the automatic stay even after the stay has terminated,
this result would be unfavorable for all parties involved.  The Court believes it prudent to issue a
ruling on motions to extend the automatic stay within the 30 day period from the debtor's
petition.
   At the time of filing, debtors are certain to foresee bringing a motion to continue the
automatic stay. In as much as a ruling should be issued within 30 days of filing, the Court is
willing to consider any motion for an order shortening time for an expedited hearing, brought in
connection with motions under § 362(c)(3)(B).

[6]The meaning of § 362(c)(3) is ambiguous in that it states the automatic stay shall be
lifted "as to the debtor."  It is not necessarily clear to the Court what this means.  The Court is
mindful of this ambiguity, but need not interpret this part of § 362 in the present opinion.

[7]§ 362(c)(3)(B).  The Court acknowledges that this provision contemplates a possible
extension of the stay only as to some creditors, but not as to all.  The facts and arguments
surrounding this case do not persuade the Court to decide when a distinction between creditors to
be stayed would be appropriate.

faith as to all creditors if -

"(I)     more than 1 previous case under any of chapters 7, 11, and 13 in which the
individual was a debtor was pending within the preceding 1-year period;

(II)     a previous case under any of chapters 7, 11, and 13 in which the individual was a
debtor was dismissed within such 1-year period, after the debtor failed to -

    (aa)     file or amend the petition or other documents as required by this title or
the court without substantial excuse (but mere inadvertence or negligence
shall not be a substantial excuse unless the dismissal was caused by the
negligence of the debtor's attorney);

    (bb)     provide adequate protection as ordered by the court; or

    (cc)     perform the terms of a plan confirmed by the court;

(III)    there has not been a substantial change in the financial or personal affairs of the
debtor since the dismissal of the next most previous case under chapter 7, 11, or
13 or any other reason to conclude that the later case will be concluded-

    (aa)     if a case under chapter 7, with a discharge; or

    (bb)     if a case under chapter 11 or 13, with a confirmed plan that will be fully
performed..."

If the § 362(c)(3)(C) presumption ("the presumption") does arise, the party in interest moving to

extend the automatic stay must carry its burden *by clear and convincing evidence*.

The code does not specify what standard of proof applies if the presumption does not

arise.  The default standard of proof in a bankruptcy case is by a 'preponderance of the

evidence.'[8]  In the absence of an indication otherwise, the court will require that a party carry its

burden of proof by a preponderance of the evidence.  Thus, the Court determines that if the

presumption does not arise, a party in interest must carry its burden under § 363(b)(3)(B) by *a*

*preponderance of the evidence*.

_____

      [8] In re Schwarten, 194 B.R. 239 (D. Kan. 1996).

## III.    DETERMINING GOOD FAITH UNDER § 363(b)(3)(B):

The code does not explain how the debtor might go about showing good faith in filing a bankruptcy petition, and no standards existed before the enactment of the BAPCPA[9] which meet this requirement head-on.  There are two pre-BAPCPA  legal standards that are relevant to the present inquiry - 1) the standards developed under § 1325(a) to determine whether a plan is proposed in good faith;[10] and 2) the standards developed under § 1307(c) to determine whether a chapter 13 case should be dismissed or converted for lack of good faith.[11]  Both of these inquiries are governed by the overarching "totality of the circumstances" test.[12]

The question remains whether this totality of the circumstances test is appropriate for purposes of § 362(c)(3)(B), to determine whether a debtor filed the bankruptcy petition in good faith.  Recently, in In re Montoya,[13] Judge Judith A. Boulden, of this Court, answered this question in the affirmative.  Judge Boulden relied on the longstanding principle that, "absent clear Congressional intent to the contrary, judicial interpretations of prior law are determinative when concepts, words, or statutory sections are adopted in an amended law on the same subject."[14]  As the term, "good faith" is not new to the bankruptcy code, the Court believes it

---

[9]Bankruptcy Abuse Prevention And Consumer Protection Act of 2005, amending the Bankruptcy Code effective October 17, 2005.

[10]See Flygare v. Boulden, 709 F.2d 1344 (10th Cir. 1983)(discussing the factors to consider in determining whether a plan was proposed in good faith under § 1325(a).

[11]See Gier v. Farmers State Bank of Lucas (In re Gier), 986 F.2d 1326 (10th Cir. 1993).

[12]Flygare,709 F.2d at 1346; Gier, 986 F.2d at 1329.

[13]No. 05-80022, 2005 WL 3160532 (Bankr. D. Utah Nov. 23, 2005)(Boulden, J.).

[14]Id. at 5.

must give this term the same meaning as it had pre-BAPCPA.  The Court is persuaded by

<u>Montoya</u> that the correct test for determining whether the debtor met his or her burden under §

362(c)(3)(B) is the 'totality of the circumstances' test as applied by §§ 1325(a) and 1307(c).

Under the umbrella of the totality of the circumstances test, the 10th Circuit Court of

Appeals ("10th Circuit") developed two different sets of factors to consider in determining

whether good faith exists under § 1325(a) ("Flygare factors") or under § 1307(c) ("Gier

factors").[15]  The question persists, however: which of these factors, if any, are relevant to

determine whether the debtor filed a bankruptcy petition in good faith under § 362(c)(3)(B)?

The <u>Montoya</u> court held that in a chapter 13 case, the <u>Gier</u> factors under § 1307(c) should

be applied.[16]   The Court agrees with <u>Montoya</u>, that the <u>Gier</u> factors are relevant to the present

inquiry.

The <u>Flygare</u> standards are largely inapplicable to whether the debtor had good faith at the

time of filing.  <u>Flygare</u> was focused only on whether a debtor has good faith in proposing a

chapter 13 plan.  In the life of a chapter 13 case, the <u>Flygare</u> factors look to determine whether

there is good faith in a completely different time period from the timing of the debtor's filing of

a case.  It is entirely possible that a debtor might file a bankruptcy case in good faith, but later

propose a chapter 13 plan not in good faith.

---

[15]See <u>Flygare</u>, 709 F.2d at 1347 (listing 11 relevant factors); <u>Gier</u>, 986 F.2d at 1329
(listing 7 relevant factors).

[16]The <u>Gier</u> factors consider: 1) the nature of the debt, including the question of hether the
debt would be nondischargeable in a Chapter 7 proceeding;  2) the timing of the petition; 3) how
the debt arose; 4) the debtor's motive in filing the petition; 5) how the debtor's actions affected
creditors; 6) the debtor's treatment of creditors both before and after the petition was filed; and
7) whether the debtor has been forthcoming with the bankruptcy court and the creditors.

At the same time, the <u>Gier</u> factors are relevant to the present inquiry because they are, at least in part, concerned with the time of filing the petition.  Motions to dismiss or convert a case under § 1307(c) can be brought at any time during a chapter 13 bankruptcy case.  Prior to the BAPCPA, many of these motions were brought before a chapter 13 plan was proposed or submitted for confirmation.[17]  In fact, the <u>Gier</u> factors were designed under the assumption that the good faith determination under § 1307(c) would be made long before the good faith determination under § 1325(a).[18]  In light of the foregoing analysis, the <u>Gier</u> factors seem appropriate for determining whether the debtor filed a petition in good faith.

The Court also notes that the <u>Gier</u> factors were not designed to facilitate a finding that the debtor filed for bankruptcy relief in good faith.  Rather, the factors laid out in <u>Gier</u> consider a much broader time period than simply the moment the debtor filed a case.[19]  A motion alleging that the debtor has not acted in good faith under § 1307(c) can be brought at any stage during a chapter 13 case.[20]  Accordingly, the <u>Gier</u> factors consider the debtor's actions before *and* after the petition was filed.  Further, the <u>Gier</u> factors contemplate a motion brought by an individual creditor, and is often based on facts relating to the debtor's treatment of the moving creditor.  Thus, the <u>Gier</u> factors consider, among other things, how the debtor has treated the creditor and how the debtor's actions affected the creditor.  This emphasis, however, is not helpful in

---

[17]<u>In re Love</u>, 957 F.2d 1350, 1354 (7th Cir. 1992)(*cited favorably by* <u>Gier</u>, 986 F.2d at 1329).

[18]<u>Id.</u>(issuing the factors later adopted by <u>Gier</u>, 986 F.2d at 1328).

[19]<u>Gier</u>, 986 F.2d at 1329 (noting that the purpose of the <u>Gier</u> factors is to determine "whether or not...there has been an abuse of the provisions, purpose, or spirit of the Chapter").

[20]See <u>Id.</u> at 1327 (the facts of the <u>Gier</u> case itself show that the motion to dismiss was considered after the court rejected the debtor's chapter 13 plan).

determining whether the debtor had good faith at the time he or she filed bankruptcy.  In general, the Court expects that a debtor's focus at the time of filing will be on all creditors.

In recognition of the differences between the focus of the <u>Gier</u> factors and the focus of § 362(c)(3)(B), the Court's totality of the circumstances analysis must consider the <u>Gier</u> factors with some reservations, and must also consider other relevant factors.  The <u>Montoya</u> court acknowledged this, in noting that some of the <u>Gier</u> factors may no longer be valid under the BAPCPA, and in noting that the <u>Gier</u> factors serve only to guide the Court's totality of the circumstances analysis.[21]

In contemplating the totality of the circumstances analysis, the Court determines that it should consider a few additional factors, not contemplated by <u>Gier</u>.  In sum, the Court believes the following factors are relevant to the analysis of good faith under § 362(c)(3)(B): 1) the timing of the petition; 2) how the debt(s) arose; 3) the debtor's motive in filing the petition; 4) how the debtor's actions affected creditors; 5) why the debtor's prior case was dismissed; 6) the likelihood that the debtor will have a steady income throughout the bankruptcy case, and will be able to properly fund a plan; and 7) whether the Trustee or creditors object to the debtor's motion.[22]

---

[21]<u>Montoya</u>, 2005 WL 3160532 at 4.

[22]The Court omits the first, sixth, and seventh <u>Gier</u> factors from its analysis. As discussed earlier, and as the <u>Montoya</u> court also acknowledged, some of the <u>Gier</u> factors are not relevant to the present inquiry.  See <u>Montoya</u>, 2005 WL 3160532 at 6.  The first <u>Gier</u> factor considers the nature of the debts at issue, including the question of whether the debt would be nondischargeable in a chapter 7 proceeding.  As the <u>Montoya</u> court noted, this factor has less significance under the post-BAPCPA code because of new restraints on entry into Chapter 7, and because the Chapter 13 discharge no longer presents a significant advantage over that of Chapter 7.  <u>Id</u>.

The sixth and seventh <u>Gier</u> factors look to how the debtor behaved after filing

## IV.    SECTION 362(C)(3) AS APPLIED TO THE VEHIKITES

Standard of Proof in the Vehikites' Case:

The presumption arises under § 362(c)(3)(C)(i)(I) if a debtor participated in more than

one individual bankruptcy case within the last year.  The Vehikites had only one bankruptcy case

pending within one year of filing the Present Case.  No presumption arises under (I).

The presumption arises under § 362(c)(3)(C)(i)(II) if a debtor had one individual

bankruptcy case which was dismissed within the one year period before filing the Present Case.

This applies to the Vehikites because their 2004 Case was dismissed 13 days before they filed

the Present Case.

Even if (II) applies initially, the presumption only arises if the debtor meets one of three

subsections.  Subsection (aa) applies if the previous case was dismissed because the debtor

"failed to file or amend the petition or other documents as required by this title or the court

without substantial excuse."  Subsection (aa) also states that "negligence shall not be a

substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney."

The Vehikites' 2004 Case was dismissed because they failed to make payments

according to their chapter 13 plan, and because the Trustee enforced this obligation in a motion

to dismiss.  The Vehikites' characterize the reason for this dismissal as their failure to file an

objection to the Trustee's motion to dismiss.  They argue that their attorney was negligent in not

---

bankruptcy.  This inquiry is relevant to § 1307(c) because that inquiry looks to the debtor's good
faith in taking actions leading up to a motion to dismiss or convert a case.  The debtors' behavior
after filing is history leading up to a motion under § 1307(c).  But the debtor's actions after filing
are not probative to whether the debtors filed for bankruptcy in good faith under § 362(c)(3).
The Court believes that the debtors' behavior after they filed for relief sheds little light on their
intentions before filing.  It is entirely possible that a debtor might file for bankruptcy in good
faith, but develop improper intentions afterwards.

filing a response to the Trustee's motion, and that if such a motion had been filed, the case would not have been dismissed.

The Vehikites' improperly characterize the reason for the dismissal of their 2004 Case. It is true that, if the Vehikites had submitted a response to the Trustee's motion to dismiss, the Court may not have dismissed their case. But their case was not solely dismissed for failure to file a response to the Trustee's motion. Their case was dismissed because the Vehikites were delinquent on plan payments. Subsection (aa) refers to a debtor's failure to file required documents. A response to the Trustee's motion is not required by the bankruptcy code. If a debtor fails to file a response, procedural requirements may result in a dismissal but the basis of the dismissal would ultimately be based on the grounds stated in the Trustee's motion to dismiss. Dismissal for failure to make plan payments is best covered by subsection (cc), which discusses a debtor's failure to perform the terms of a confirmed plan. If the Court were to construe a debtor's failure to respond to a motion to dismiss as a failure to file a document, the court would obfuscate the significance of subsection (cc), while also providing an incentive for first-time debtors to allow dismissal of their case by simply not filing a response to a motion to dismiss. The Court would also be asked to engage in conjecture as to how it would have ruled if the debtors had filed an objection. This is an inadvisable result, and one to which the Court will not subscribe.[23] Accordingly, the Court determines that subsection (aa) is inapplicable to the facts of the Vehikites' case. Their case was dismissed because they failed to make timely plan payments. This failure is appropriately covered by subsection (cc), discussed below.

---

[23]Initially, the Court believed that the Vehikites' prior dismissal should be analyzed under subsection (aa). After further review, the Court is not persuaded that subsection (aa) is applicable. This change in the Court's analysis does not effect the ultimate ruling of the Court.

Subsection (bb) applies if the previous case was dismissed because the debtor failed to "provide adequate protection as ordered by the court."  This subsection is not relevant in the Vehikites' case.

Subsection (cc) applies if the previous case was dismissed because the debtor failed to "perform the terms of a plan confirmed by the court."  The Court confirmed the Vehikites' chapter 13 plan on November 30, 2004, requiring them to make monthly payments of $400.  They failed to make several payments.  The Trustee responded to their delinquency by bringing a motion to dismiss. Their case was dismissed because the Vehikites' did not comply with the terms of their confirmed plan - they did not make timely plan payments.  For purposes of subsection (cc), it is irrelevant that the Vehikites might have survived the Trustee's motion to dismiss if only their attorney had filed a response.  The Court determines that the presumption arises under § 362(c)(3)(C)(i)(II)(cc).  Accordingly, the Vehikites must carry their burden under § 362(c)(3)(B) by clear and convincing evidence.

The presumption arises under § 362(c)(3)(C)(i)(III) if there has not been a substantial change in the debtor's financial or personal affairs since the prior case was dismissed. The Court need not analyze this section, as the Court has already determined that the presumption arises in the Vehiktes' case.

Analysis of the Vehikites' Case under § 362(c)(3)(B):

The first factor to consider in the Court's analysis is the timing of the debtors' petition.  If the debtors waited a full year before refiling, all the while having no intention to stay out of bankruptcy, that would be evidence of bad faith.  Creditors incur substantial costs in seeking collections of their debts. A debtor who knows that he cannot pay his debts or these new

14

collection costs would be acting in bad faith by allowing the debts to mount.  In the Vehikites'

case, the debtors filed the present case 13 days after their prior case was dismissed.  They did not

wait to see what their creditors would do, but took affirmative action to address their debts.  The

Court determines that this factor weighs in favor of granting the Vehikites' motion.

The second factor to consider is how the debts at issue arose. This factor looks primarily

to whether the debts arose from luxury spending, from reoccurring expenses, or whether they

were the result of unavoidable costs, such as medical bills.  The majority of the debts in the

Vehikites' case are credit card expenses which appear to be for personal purchases, rather than

medical expenses.  The Court also notes that the Vehikites scheduled unsecured debts in this

case of  approximately $20,000 more than those scheduled in the prior case.  This suggests that

the Vehikites' did not file the Present Case in good faith.  This factor weighs against granting the

Vehikites' motion.

The third factor to consider is the debtor's motive in filing the Present Case.  As the

Montoya court noted, this is a wholly subjective inquiry, but nonetheless relevant.[24]  Based on

the Vehikites' testimony, the Court is convinced that their motive in filing the Present Case was

to responsibly address their debts, and to pay as much of their debts as possible. This factor

weighs in favor of granting the Vehikites' motion.

The fourth factor to consider is how the debtor's actions affected creditors.  Filing for

bankruptcy relief will almost always prejudice one's creditors.  In the Vehikites' case, there is no

depreciating collateral at issue. The prejudice suffered by the Vehikites' creditors is simply that

they are not being paid at the moment.  The most that can be said of this factor is that it does not

---

[24]Montoya, 2005 WL 3160532 at 6.

15

weigh against granting the Vehikites' motion.

The fifth factor to consider is why the debtors' prior case was dismissed. If the prior case was dismissed for the debtor's attempts to manipulate the system or some other bad conduct, that would bare on whether the Present Case was not filed in good faith. In the Vehikites' case, their prior case was dismissed when their attorney failed to file an objection to the Trustee's motion to dismiss. It is true that their case was dismissed for the Vehikites' failure to make timely plan payments, but the Court notes that they attempted to cure their delinquency. The Court is also mindful of the fact that, despite the Vehikites' requests, their attorney ignored their request to file a response to the Trustee's motion to dismiss. This factor weighs in favor of granting the Vehikites' motion.

The sixth factor to consider is the likelihood, at the time of filing, that the debtor could properly fund and maintain a chapter 13 plan. If a debtor was unemployed when he or she filed the present case, this would cut against an inference that the debtor filed with a true intention to repay creditors. In the Present Case, however, the Vehikites' have a long and steady employment history with the same employers. In fact, Mr. Vehikite has worked for the same employer for more than 30 years. This fact infers that at the time of filing, the debtors had every intention of proceeding and fulfilling their obligations under chapter 13. This factor weighs in favor of granting the Vehikites' motion.

The seventh factor to consider is whether the Trustee or any creditor objects to the debtor's motion. The Chapter 13 Trustee has a significant role in these cases.[25] The Trustee monitors the conduct of debtors and is often in the best position to sniff out a debtor's bad faith.

---

[25]§ 1302(b), (c), and (d).

16

The Trustee is likely to object to a debtor's motion to extend the automatic stay where the

bankruptcy case, at the early stage of the debtor's motion, has no hope of survival.  This is

relevant to whether the debtor filed the present case with the intent of pursuing the case and with

the intent of paying his or her debts.  Likewise, the absence of any objection filed by a creditor is

also relevant to show that the debtor has filed in good faith.  In this case, neither the Trustee nor

any creditors objected to the Vehikites' motion. Rather, the Trustee seemed to endorse the

motion at the hearing. This factor weighs in favor of granting the Vehikites' motion.

In light of the above analysis, the Court determines that under a totality of the

circumstances analysis, the Vehikites' have carried their burden to show by clear and convincing

evidence that they filed the present case in good faith.

**V.      SECTION 362(C)(3) AS APPLIED TO THE GALANISES**

Standard of Proof in the Galanises' Case:

The presumption does not arise under § 362(c)(3)(C)(i)(I) in this case because the

Galanises had only one bankruptcy case pending within one year of filing the present case.

The presumption may arise under § 362(c)(3)(C)(i)(II) because the Galanises' prior case

was dismissed within one year of the present case.  The Court must now consider whether that

dismissal was caused by any of the factors discussed by subsections (aa) through (cc).

As with the Vehikites' prior case, the Galanises' 2002 Case was dismissed because they

failed to make timely plan payments.  Accordingly, the presumption does not arise under

subsections (aa) or (bb), but does arise under subsection (cc).  The Galanises must carry their

burden under § 363(c)(3)(B) by clear and convincing evidence.

Also similar to the Vehikites' case, the Court need not analyze the presumption under

section (III), as the Court has already determined that the presumption arises under section (II).

Analysis of the Galanises' Case under § 362(c)(3)(B):

The first factor to consider in analyzing the Galanises' motion is the timing of the their petition.  The Galanises filed the present case 105 days after their prior case was dismissed. Absent a compelling reason for the break,  this length of time might infer that the Galanises did not file in good faith. The Galanises explained that the length of time was largely due to Mrs. Galanis's medical care.  This explanation is sufficient to satisfy the Court.  The court determines that this factor, the timing of the debtor's petition, does not weigh against granting the Galanises' motion.

The second factor to consider is how the Galanises' debts arose. The majority of the debts in this case are credit card expenses which were for personal purchases and medical expenses. These expenses appear to have been necessary and unavoidable. These are not the kind of expenses which suggest that the debtors shirked their financial responsibilities. This factor weighs in favor of granting the Galanises' motion.

The third factor to consider is the Galanises' motive in filing their 2005 Case. Based on the Galanises' testimony, the Court is convinced that their motive in filing the present case was to responsibly address their debts, and to pay as much of their debts as possible. At oral arguments on this matter, the Galanises made much of the fact that the unsecured creditors in this case could not garnish their income, as the source of their income is exempt from garnishment. So under a chapter 13 plan, the Galanises' are paying their creditors more than the creditors would likely receive outside of bankruptcy.  The Galanises argue that this factor weighs in favor of granting the motion.  Although the Court is aware that filing the present bankruptcy case

18

brings a substantial benefit to the debtors themselves, the Court nevertheless determines that the

present filing was motivated by good faith. This factor weighs in favor of granting the Galanises'

motion.

The fourth factor to consider is how the Galanises' actions affected their creditors. As in

the Vehikites' case there is no depreciating collateral at issue. The prejudice suffered by the

debtors' creditors is simply that they are not being paid at the moment.  The most that can be

said of this factor is that it does not weigh against granting the debtor's motion.

The fifth factor to consider is why the debtors' prior case was dismissed. The Galanises'

prior case was dismissed because they failed to make timely plan payments. They testified that

they could not maintain their payments because of changed circumstances - Mrs. Galanis's

injuries and medical bills.  The Galanises did not respond to the Trustee's motion to dismiss

because their new medical bills rendered their original plan not feasible.  This explanation shows

that the Galanises are not attempting to file a new case simply to manipulate the bankruptcy code

or to otherwise act improperly.  The Galanises had a realistic motivation in not filing an

objection to the motion to dismiss their 2002 Case.  The Court also notes that at the time the

court dismissed the 2002 Case, the Galanises had returned to unsecured creditors 45% of the

amounts that were ordered to be paid through their plan.  This factor weighs in favor of granting

the Galanises' motion.

The sixth factor to consider is the likelihood, at the time of filing, that the debtor could

properly fund and maintain a chapter 13 plan.  The Galanises have a steady source of income

which is not likely to disappear anytime soon.  Their sole sources of income result from Mr.

Galanis's permanent disabilities. As he is not likely to get better in the near future, it is unlikely

19

that the Galanises' income will change throughout the life of their bankruptcy case. This factor weighs in favor of granting the Galanises' motion.

The seventh factor to consider is whether the Trustee or creditors object to the debtor's motion. As with the Vehikites' case, neither the Trustee nor any creditors objected to the debtor's motion. Also similar to the Vehikites' case, the Trustee seemed to endorse the motion. This factor weighs in favor of granting the Galanises' motion.

In light of the above analysis, the Court determines that under a totality of the circumstances analysis, the Galanises have carried their burden to show that they filed the present case in good faith, by clear and convincing evidence.

Separate orders are to be entered in each of these cases, granting the motions.

___ooo0ooo___

Service of the foregoing **MEMORANDUM DECISION** will be effected through the
Bankruptcy Noticing Center to each party listed below.


David Berry
Berry & Trip, P.C.
5296 So. Commerce Drive, Suite 200
Salt Lake City, UT 84107

Nicholas and Lee Ann Galanis
2541 East Nantucket Drive
Salt Lake City, UT 84121

Jeffrey Hagen
Whatcott, Barrett & Hagen
1846 South 300 West
Salt Lake City, UT 84115

Siaosi and Foou Vehikite
5685 Aberdeen Lane
Stansbury, Utah 84074